UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Yatau Her,

    Plaintiff,

v.

Paul Paulis, et al.,

    Defendants.

File No. 11-cv-808 (PAM/TNL)

**REPORT AND RECOMMENDATION**

This matter is before the Court, Magistrate Judge Tony N. Leung, on Defendants' Second Motion for Summary Judgment (ECF No. 42). Defendants' Motion was referred to the magistrate judge for report and recommendation to the Honorable Paul Magnuson, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, this Court will recommend that Defendants' Motion be granted and this action be dismissed with prejudice.

**I.    FACTS**

Plaintiff is a prisoner at the Waupun Correction Institution ("WCI") in Waupun, Wisconsin. (Compl., ECF No. 1.) He filed this civil rights action arising out of his February 23, 2005 arrest in St. Paul, Minnesota. (*Id.* ¶ 1.)

On February 23, 2005, Ramsey County Deputies William Snyder and Chris Tayson were in the area of 1564 Ames, St. Paul, Minnesota, looking to arrest Plaintiff on an outstanding warrant for escaping incarceration in California. (Baribeau Aff. Exs. D, E,

ECF No. 45.) Plaintiff was wanted for robbery and attempted murder in Eau Claire, Wisconsin, and for a fatal shooting in Columbia Heights, Minnesota. (*Id.*) Deputies Tayson and Snyder approached three males and asked them to stop. (*Id.* Ex. D.) One of the three men turned towards the deputies, pulled a gun from his front pocket, and began firing. (*Id.*) Deputy Tayson was wounded, and the three men fled on foot. (*Id.*)

St. Paul Police Officers "Defendants Paulis [*sic*] and Longen engaged in the pursuit of [Plaintiff], who was on foot, while in their squad car . . . ." (Compl. ¶ 3.) Officer Paulos was driving, and Officer Longen was in the passenger seat. (Longen Aff. Ex. A, ECF No. 47; Paulos Aff. Ex. A, ECF No. 49.) Officers Paulos and Longen heard on the police radio that an officer was down and that the suspects were three Asian males wearing dark clothing. (Longen Aff. Ex. A.) Officers Paulos and Longen saw Plaintiff running near 1348 Ames. (*Id.*) When Plaintiff saw the squad car, he "doubled back" and ran away from the squad car. (*Id.*) Officer Paulos activated his siren and lights, and Officer Longen yelled at Plaintiff through an open window to stop. (Paulos Aff. Ex. A.) The officers observed Plaintiff pull a black semi-automatic pistol from his waistband and throw it. (*Id.*; Longen Aff. Ex. A.) Plaintiff continued to run. (Her Aff. ¶ 4, ECF No. 65.) Officer Paulos continued to pursue and eventually stopped Plaintiff by striking him with the squad car. (Paulos Aff. Ex. A.)

It is unclear whether Plaintiff remained standing after he was struck (*see* Longen Aff. Ex. A) or the impact knocked Plaintiff to the ground (*see* Her Aff. ¶ 4). After the impact, Officers Paulos and Longen exited the squad car and attempted to handcuff Plaintiff. (Paulos Aff. Ex. A; Longen Aff. Ex. A.) Officer Longen gave several

commands with which Plaintiff did not comply. (Longen Aff. Ex. A.) Plaintiff was face-down on the ground and Officers Paulos and Longen gave him several commands to put his hands behind his back. (Paulos Aff. Ex. A; Longen Aff. Ex. A.) Plaintiff did not comply with the officers' orders. (Paulos Aff. Ex. A; Longen Aff. Ex. A; Her Aff. ¶¶ 5-7.) Officers Paulos and Longen both reported that Plaintiff was laying on his hands and refusing to comply (Paulos Aff. Ex. A; Longen Aff. Ex. A); Plaintiff, however, asserts that he was shielding his head from the officers' blows (Her Aff. ¶ 5). Officers Paulos and Longen were unable to handcuff Plaintiff. (Paulos Aff. Ex. A; Longen Aff. Ex. A.)

When Officers Steven Pacolt and Michael Herschman arrived at the scene, Plaintiff was lying face-down and Officers Paulos and Longen were trying to handcuff him. (Herschman Aff. Ex. A, ECF No. 46; Pacolt Aff. Ex. A, ECF No. 48.) According to their reports, they observed Plaintiff refusing to comply with the other officers' commands and tucking his hands underneath his body. (Herschman Aff. Ex. A; Pacolt Aff. Ex. A.) Upon the arrival of Officers Herschman and Pacolt, Officer Paulos backed away from Plaintiff and concentrated on looking for the handgun. (Paulos Aff. Ex. A.) Officer Pacolt punched Plaintiff's back between five and eight times while instructing him to place his hands behind his back. (Pacolt Aff. Ex. A.) Officer Herschman struck Plaintiff six times with his knee and ten times with his baton while instructing him to place his hands behind his back. (Herschman Aff. Ex. A.) Eventually, the officers were able to handcuff Plaintiff and placed him in a squad car. (Herschman Aff. Ex. A; Pacolt Aff. Ex. A.)

In December 2010, Plaintiff filed the instant suit against Defendants Paulos, Longen, Pacolt and Herschman (collectively, the "Defendant Officers"), multiple Officer John Does, the City of St. Paul, and the St. Paul Police Department, asserting claims for excessive force, failure to protect, unconstitutional custom of excessive force, unconstitutional failure to train and discipline, violations of the Minnesota Human Rights Act ("MHRA"), and violations of the Minnesota Government Data Practices Act ("MGDPA"). (Compl. ¶¶ 15-39.) Judge Magnuson granted Defendants' first motion for summary judgment with respect to Plaintiff's MHRA and MGDPA claims and dismissed the St. Paul Police Department as a defendant. (ECF No. 32.)

Presently before the Court is Defendants' Second Motion for Summary Judgment (ECF No. 42.) On December 20, 2012, this Court granted Plaintiff's Motion to Reopen Discovery (ECF No. 35) and granted in part his Motion to Compel. (ECF No. 69.) Because this reopened discovery for a limited time, the Court issued an Amended Pretrial Scheduling Order (ECF No. 71), which provided that all non-dispositive motions were to have been filed on or before April 1, 2013, and all dispositive motions were to have been filed on or before May 1, 2013. The Order also provided that Defendants could file any supplemental briefing addressing the instant Motion on or before May 1, 2013, and Plaintiff could supplement his submissions on or before May 7, 2013. (*Id.* ¶ 5a.) Pursuant to a request from Plaintiff (*see* ECF No. 72), this Court extended his deadline to supplement his submissions from May 7 to May 31, 2013. (ECF No. 74.)

Plaintiff informed the Court on June 21, 2013 that his outgoing mail had been seized pending an investigation, and that this interruption prevented his supplementary

materials from being mailed in time to meet his deadline. (Letter to Clerk's Office at 1, ECF No. 85.) Plaintiff's supplemental materials were filed on July 1, 2013. (ECF Nos. 86-89.) The issues have been fully briefed and are now ripe for disposition.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant has the burden of demonstrating that no genuine issue of material fact remains to be decided. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits, the burden shifts to the party opposing the motion to demonstrate with "specific facts" that a disputed issue of material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Courts must make all inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### B. Plaintiff's Claims Against Defendant Does

Plaintiff alleges that Defendant Officer Does used excessive force and failed to protect him, thus violating his constitutional rights. To date, Plaintiff has failed to identify these unnamed officers, and the facts in the record do not reflect that any officers other than the named Defendant Officers were involved in Plaintiff's arrest. In its Report and Recommendation to Judge Magnuson concerning Defendants' first motion for summary judgment, this Court determined that dismissing the Doe Defendants was premature

5

because discovery "concerning all officers involved in [Plaintiff's] arrest" was not yet complete. (ECF No. 30 at 6.)

Now, over a year later, discovery is closed. Plaintiff has had ample time to supplement the record with any evidence of other officers' involvement in his arrest and name the Defendant Does. The Plaintiff, however, has failed to do so. The record contains no evidence that any other officers were involved in effecting Plaintiff's arrest. Accordingly, Plaintiff's claims against Defendant Does must be dismissed.

### C. Excessive Force Claims

Plaintiff alleges that the Defendant Officers subjected him to excessive force in violation of his Fourth Amendment rights. This claim relies on two uses of force: (1) Officer Paulos's striking Plaintiff with the squad car; and (2) the force used by Officers Paulos, Longen, Herschman and Pacolt in detaining and handcuffing Plaintiff. Defendants argue that the Defendant Officers are all entitled to qualified immunity for their actions in arresting Plaintiff. Government officials who perform discretionary tasks are entitled to qualified immunity unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Nelson v. County of Wright*, 162 F.3d 986, 989 (8th Cir. 1998). In analyzing whether the Defendant Officers are entitled to qualified immunity, the Court must assess whether the facts show that the challenged conduct violated a constitutional right and whether the right at issue was clearly established on the date in question. *E.g.*, *Avalos v. City of Glenwood*, 382 F.3d 792, 798

(8th Cir. 2004) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court may choose which of these prongs to address first. *Pearson v. Callahan*, 555 U.S. 223, 235-36 (2009).

### 1. Excessive Force in Striking Plaintiff with Squad Car

It is undisputed that the Fourth Amendment precludes the use of excessive force by law-enforcement officers. *E.g., Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998). The question to be answered, therefore, is whether the amount of force used by the Defendant Officers exceeded the constitutionally permitted quantum of force. Not every push or shove by an officer violates the Fourth Amendment. *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003). "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 480 U.S. 386, 396 (1989). Force used in making an arrest is not excessive in violation of the Fourth Amendment if the "officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397. The severity of the crime at issue, whether the suspect poses an immediate threat to the public or the officers' safety, and whether the suspect is actively resisting or evading arrest are all relevant in determining whether the officers in question acted reasonably. *Id.* at 396. A court's reasonableness analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97. Ultimately, "the dispositive question is whether the officer's conduct was objectively reasonable under the circumstances, as judged from the perspective of a reasonable officer on the scene at the time the force was applied."

*Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (citing *Graham*, 490 U.S. at 396); *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009)).

In certain circumstances, law enforcement officers may use deadly force to attempt to detain fleeing suspects. *See, e.g., Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam) (finding an officer entitled to qualified immunity for shooting a suspect fleeing in a vehicle because whether force used violated an established right was unclear). The Supreme Court has defined constitutionally reasonable deadly force:

> Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given.

*Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).

Here, Officer Paulos faced a tense, uncertain, and rapidly evolving scenario. Viewing the evidence in a light most favorable to Plaintiff, he was wanted on a warrant for escaping incarceration in California; he was wanted for robbery and attempted murder in Wisconsin; and he was suspected in a fatal shooting in Minnesota. Importantly, Plaintiff was suspected of having just shot a police officer, and fled as soon as law enforcement initiated contact with him. Although Officer Paulos saw Plaintiff throw a handgun during the pursuit, Plaintiff was not submitting to Officer Longen's orders to stop. Based on the totality of the circumstances, Officer Paulos had probable cause to believe that Plaintiff posed a threat of serious physical harm to himself, other officers

responding to the radio call, and to the public. Plaintiff was aware of the squad car and the officers' pursuit both by the squad car's sirens and lights and by Officer Longen's shouted orders.

Plaintiff argues that deadly force was objectively unreasonable because (1) he had disarmed himself and (2) non-lethal methods were available. Pl.'s Mem. in Opp'n 9, ECF No. 67. The Constitution, however, "requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent course of conduct as judged by 20/20 hindsight vision." *Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). "It may appear, in the calm aftermath, that an officer could have taken a different course, but we do not hold the police to such a demanding standard." *Gardner v. Buerger*, 82 F.3d 248, 251 (8th Cir. 1996). Officer Paulos had seen Plaintiff flee and throw a handgun during the chase. Officer Paulos, however, had no reason to know that the firearm he threw was the only weapon that Plaintiff was carrying. *See Loch v. City of Litchfield*, 837 F. Supp. 2d 1032, 1040 (D. Minn. 2011) (finding that a statement that a gun might be nearby is insufficient to support a conclusion that the officer had actual knowledge the suspect was unarmed). Officer Paulos had reason to believe that Plaintiff had just "committed a crime involving the infliction . . . of serious physical harm" and "some warning" had been given to Plaintiff to stop fleeing. *Garner*, 471 U.S. at 11-12. Moreover, given the totality of the dangerous circumstances and the fact that Plaintiff continued to flee, Officer Paulos had a reasonable basis on which to believe that Plaintiff continued to pose an imminent threat to himself and to the public. Accordingly, the Court determines that Officer Paulos is entitled to qualified immunity because it was objectively reasonable for Officer Paulos to

remain in the relative protection of his squad car and use deadly force to prevent Plaintiff's escape.

### 2. Excessive Force in Handcuffing Plaintiff

This Court's analysis of Plaintiff's remaining excessive-force claim begins by noting that the underlying facts occurred in 2005, six years before the Eighth Circuit Court of Appeals decided *Chambers v. Pennycook*, 641 F.3d 898. There, the court noted that "over the course of more than fifteen years, . . . it . . . remain[ed] an open question in this circuit whether an excessive force claim requires some minimum level of injury." *Id.* at 904. *Chambers* laid this issue to rest and clarified that even a *de minimis* injury can support an excessive-force claim. The Eighth Circuit's decision, however, was not retroactive; "[g]iven the state of the law" before that decision, a reasonable police officer "could have believed that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment." *Id.* In other words, it was not clearly established pre-*Chambers* that an officer violated an arrestee's rights if he caused only *de minimis* injuries.

Viewing the record in a light most favoring Plaintiff, it contains no evidence that he suffered more than *de minimis* injuries. Plaintiff asserts that the force employed by the Defendant Officers resulted in bruising and extreme pain, caused him to lose consciousness, and produced severe migraines for a few months after the incident. Her Aff. ¶ 9. These injuries, without more, are *de minimis* injuries. *Compare Andrews v. Fuoss*, 417 F.3d 813, 816, 818 (8th Cir. 2005) ("immediate pain flare-up relating to pre-existing neck and back conditions", a "horrible, horrible" headache, and soreness in neck,

arm and shoulder were "precisely the type of *de minimis* injuries that preclude a claim for excessive force"), *with Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (bruises, swelling, loosened teeth, and a cracked dental plate were more than *de minimis* injuries for purposes of a § 1983 claim); *cf. Wertis v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006) (relatively minor scrapes and bruises and aggravation of a pre-existing shoulder condition were *de minimis* injuries). Even though it is assumed for purposes of this Motion that Plaintiff did lose consciousness, nothing in the record supports a finding of "any long-term injury, or any injury at all, resulting from such period of unconsciousness." *LaCross v. City of Duluth*, Civ. No. 10-3922 (JNE/LIB), 2012 WL 1694611, at *12 (D. Minn. May 14, 2012) (determining that unconsciousness resulting from tasering a suspect is a *de minimis* injury).

The Defendant Officers determined that force was necessary to seize and detain a dangerous, fleeing individual who was suspected of having just shot a police officer. They "knew there was some chance that their actions would cause only *de minimis* injury, and it was reasonable for the officers to believe that they remained within constitutional bounds if that was the result." *Chambers*, 641 F.3d at 908. No evidence on the record supports a finding of more than *de minimis* injury. Accordingly, "given the law prevailing at the time of the incident," *id.* at 909, the Defendant Officers are entitled to qualified immunity on Plaintiff's excessive-force claims because Plaintiff has failed to show that he suffered more than a *de minimis* injury.

### D. Failure to Protect

In 2005, it was clearly established that an officer may be liable for an unreasonable seizure under the Fourth Amendment if he fails to intervene to prevent the unconstitutional use of excessive force by another official. The Eighth Circuit has held that a police officer has a duty to intervene to prevent the excessive use of force by a fellow officer "where he is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009) (citations omitted); *see also, e.g., Williams v. Mueller*, 13 F.3d 1214, 1216 (8th Cir. 1994). But, because the Court has determined above that no evidence on the record supports a finding of more than de minimis injury, and further that the Defendant Officers could reasonably have believed at the time of the arrest that the amount of force they used while handcuffing Plaintiff was not excessive so long as Plaintiff suffered no more than *de minimis* injuries, the Defendant Officers had no duty to intervene. Accordingly, the Defendant Officers are entitled to summary judgment on Plaintiff's failure to protect claim.

### E. Claims Against the City of St. Paul

Plaintiff also claims that St. Paul violated his constitutional rights by maintaining a widespread practice and custom of using excessive force on suspects and a widespread practice of failing to train and discipline its officers regarding the use of excessive force.

#### 1. Unconstitutional Custom or Practice

A city "may be held liable for the unconstitutional acts of its . . . employees when those acts implement or execute an unconstitutional policy or custom." *Johnson v.*

*Outboard Marine Corp*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The plaintiff must prove that a municipal policy or custom was the "moving force behind the constitutional violation." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999) (quotation and citation omitted).

Plaintiff has not identified any official policy that compelled the Defendant Officers' conduct. *See id.* (defining "policy" as used in a *Monell* analysis as "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters"). The Court must therefore determine whether Plaintiff has put forth evidence from which a reasonable jury could find that a municipal custom existed. The three requirements to prove a municipal custom exists are:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
(3) Th[e] plaintiff[′s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson County*, 150 F.3d 873, 880 (8th Cir. 1998) (citation omitted) (alterations in the original). Thus, Plaintiff must produce evidence that his injury was caused by officers engaging in a widespread and persistent pattern of excessive force that municipal policymakers were either deliberately indifferent to or tacitly authorized. *See, e.g., Russell v. Hennepin County*, 420 F.3d 841, 849 (8th Cir. 2005).

To support his assertion that St. Paul has such a custom, Plaintiff points to 30 different IAU investigations into the Defendant Officers, for everything from improper procedure to poor public relations. The only IAU investigations relevant to Plaintiff's claim of an unconstitutional policy of excessive force, however, are the investigations into excessive-force complaints. Plaintiff has identified 12 complaints of excessive force against the Defendant Officers from 1994 to the present, not including the instant matter. *See* ECF No. 87-1 at 11-16, 25-29; ECF No. 87-1 at 113-15, 119. Of those 12 complaints, IAU determined that only one complaint was founded—an excessive-force complaint against Defendant Pacolt from July 3, 2008. ECF No. 87 at 115. The remainder of the complaints were unfounded (ECF No. 87 at 37; ECF No. 87-1 at 113, 119), not sustained (ECF No. 87 at 16, 39; ECF No. 87-1 at 115), or the officer in question was exonerated (ECF No. 87 at 36, 38, 39). None of the complaints concerning events arising before the facts of this case were sustained against the Defendant Officers. Only one incident of excessive force is an insufficient basis on which a reasonable jury could find that the City of St. Paul had "an official policy," "deliberate choice" or "guiding principle" tacitly authorizing the use of excessive force. *Russell*, 420 F.3d at 849.

Moreover, the record does not contain evidence of a "widespread, persistent pattern" of excessive force. *Mettler*, 165 F.3d at 1204. Even if the Court were to assume *arguendo* that the Defendant Officers used excessive force in effecting his arrest, Plaintiff could not rely solely upon his claim that the Defendant Officers violated his constitutional rights to support his unconstitutional policy or custom claim. Out of the 30 IAU reports Plaintiff argues support his claim, only 12 concerned complaints of

excessive force, and only one of those 12 was sustained. "Liability for an unconstitutional custom or policy . . . cannot arise from a single act." *McGautha v. Jackson County*, 36 F.3d 53, 57 (8th Cir. 1994). Plaintiff also has put forth no evidence that the force used by the Defendant Officers was a result of a departmental custom rather than a split-second judgment based on the information available at the time, which included reports that an officer had just been shot and a suspect was continuing to flee.

Finally, the Court has determined above that it will grant Defendants summary judgment on Plaintiff's excessive-force claims. If these facts cannot support a claim for excessive force, then there can be no recovery for an unconstitutional practice of custom of excessive force. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) (holding that where a claimant alleging excessive force suffers no constitutional harm at the hands of a police officer, recovery cannot be had for an unconstitutional custom of excessive force). Viewing the record in a light most favorable to Plaintiff, no evidence exists to support Plaintiff's claim of an unconstitutional custom of excessive force. Accordingly, St. Paul is entitled to summary judgment on Plaintiff's unconstitutional custom claim.

### 2. Failure to Train and Discipline

Plaintiff also asserts that St. Paul has a policy of insufficiently training its officers and improperly investigating and disciplining officer misconduct. "Inadequate training may serve as a basis for liability against a municipality when the failure to train 'amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1012 (D. Minn. 1998) (quoting *City*

*of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "Without a constitutional violation by the individual officers," however, no liability for a failure to train can exist. *Sanders v. City of Minneapolis*, 474 F.3d 523, 527 (8th Cir. 2007) (citing *Heller*, 475 U.S. at 799, and *Walker v. Bonenberger*, 438 F.3d 844, 890 (8th Cir. 2006)). As set forth above, this Court determines that no constitutional violation occurred. Accordingly, Plaintiff's *Monell* claim alleging a failure to train or discipline St. Paul police officers must fail.

Plaintiff further argues that his claim should survive summary judgment because it fits within a narrow range of circumstances where a failure to train claim can succeed without showing a pattern of constitutional violations. Pl.'s Mem. in Opp'n at 13 (citing, *inter alia, Harris*, 489 U.S. at 390 n.10). In *Harris*, the Court held that inadequate police training can create liability under § 1983 only where the failure amounts to "deliberate indifference." *Harris*, 489 U.S. at 389. Plaintiff, however, has pointed to no specific facts demonstrating "deliberate indifference" on the part of St. Paul or a causal connection between the Defendant Officers' training and his injuries. He has not established that any of the Defendant Officers have an "obvious" need for "more or different" training or discipline than other officers, the lack of which is "so likely to result in the violation of constitutional rights" that the City's failure to provide it amounts to deliberate indifference. *Id.*

As this Court discussed above, the only IAU investigations relevant to Plaintiff's claims are investigations of excessive-force complaints. Of the 12 complaints on which Plaintiff relies, IAU determined that only one complaint was founded—an excessive-force complaint against Defendant Pacolt from July 3, 2008. *See* ECF No. 87 at 115. The

16

rest of the complaints were unfounded (ECF No. 87 at 37; ECF No. 87-1 at 113, 119), not sustained (ECF No. 87 at 16, 39; ECF No. 87-1 at 115), or the officer in question was exonerated (ECF No. 87 at 36, 38, 39). None of the excessive-force complaints concerning events arising before the facts of this case were sustained against any of the Defendant Officers. Only one incident of police misconduct is insufficient to show "that city officials had knowledge of prior incidents of police misconduct and failed to take remedial action." *Parrish v. Luckie*, 963 F.2d 201, 204 (8th Cir. 1992).

Plaintiff has had ample opportunity to review discovery documents and provide the Court with evidence supporting his claim that St. Paul failed to train or discipline its officers. The record contains no such evidence. Accordingly, St. Paul is entitled to summary judgment on Plaintiff's failure to train and discipline claim.

### III. RECOMMENDATION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 42) be **GRANTED** and this action be **DISMISSED WITH PREJUDICE.**

Date: July 16, 2013  
s/ Tony N. Leung  
Tony N. Leung  
United States Magistrate Judge  
District of Minnesota

*Her v. Paulis, et al.*  
File No. 11-cv-808 (PAM/TNL)

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that

specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **July 31, 2013**.